SALLIE VIRGIN, Appellant, v. MEDORA KENNEDY, JOHN W. TAYLOR
and JAMES F. TAYLOR; MEDORA KENNEDY, Appellant.—32 S.
W. (2d) 91.

Division Two, October 13, 1930.

*D. C. Barnett, J. R. Nicholson* and *W. M. Anderson* for appellants.

402

*T. N. Haynes* for respondents.

COOLEY, C.—Action to determine title to and for partition of forty acres of land. The judgment below, in the Circuit Court of Cass County, was for defendants John W. Taylor and James F. Taylor, adjudging them to be the owners in fee of the land. Plaintiff Sallie Virgin and defendant Medora Kennedy are both named as appellants here. The record certified to this court shows that while they both joined in the bill of exceptions the appeal was taken by plaintiff only, which fact, however, in the view we take of the case, makes no difference in the disposition of the appeal. As counsel on both sides refer to plaintiff and defendant Medora Kennedy as appellants, we shall for convenience so refer to them herein.

This case involves primarily the effect of a partition suit tried about 1873. The land in controversy is forty acres, the west half of the southwest fourth of the southwest quarter of Section Twelve, and the south half of the southeast fourth of the southeast quarter of Section Eleven, all in Township Forty-five, Range Thirty-one, in Cass County, and constituted part of two hundred acres of land owned by Owen D. Moffit at his death. Moffit is the common source of title. He died intestate about 1862, seized in fee simple of the

two hundred acres, leaving a widow, Martha, and seven children. Three of the children, Elizabeth, William and James, as we understand the record, were by a former marriage. Martha thereafter married one William B. Taylor and of that marriage were born two children, John W. Taylor, defendant herein, and Nancy, now deceased. Defendant James F. Taylor is a son of William B. by a later marriage.

After the marriage of Martha Moffit and William B. Taylor, two of the older children of Owen D. Moffit, Elizabeth and William, conveyed to Martha Moffit Taylor their respective one-seventh interests in the two hundred acres, thus giving her an undivided two-sevenths in fee, and James conveyed his undivided one-seventh to William B. and Martha Taylor.

Martha Taylor died intestate about 1871, and in 1872 William B. Taylor, as plaintiff, instituted a suit in the Circuit Court of Cass County to partition the aforesaid two hundred acres of land. In that partition suit, which is herein referred to as Case No. 4701, all of the heirs of Owen D. Moffit, as well as all heirs of Martha Moffit Taylor, were made parties defendant and all were duly served with process. The parties plaintiff and defendant in Case 4701 owned the whole title to the two hundred acres, their respective interests all being undivided interests therein.

Appellant Sallie Virgin and defendant Medora Kennedy are children of Owen and Martha Moffit. At the time of the partition suit they were single and were minors, as were their brother and sister, Joseph and Ann Moffit, and their half-brother and half-sister, John W. and Nancy Taylor. The four Moffit minors answered and were represented in the partition suit by their general guardian and curator, and the Taylor minors by a duly appointed guardian *ad litem*. No point is made in the present suit that the court, in Case 4701, did not have jurisdiction of all parties, nor, as we understand it, is the court's jurisdiction to adjudge partition of the land in Case 4701 now questioned.

It will be seen that by the conveyance from James Moffit, William B. Taylor became the owner in fee of an undivided one-seventh of the two hundred acres as surviving tenant by the entirety upon the death of his wife Martha. But in his amended petition in Case 4701 he seems to have treated that deed as making him and Martha tenants in common of that share. He alleged his interest as being an undivided one-fourteenth of the two hundred acres in fee and curtesy in the undivided five-fourteenths which he alleged had been owned in fee by Martha. The four Moffit minors are therein alleged to have owned each an undivided one-seventh in fee as heirs of Owen Moffit, and a further interest as heirs of Martha of an undivided five-eighty-fourths of the whole tract, the latter interest being subject to the curtesy of William B. Taylor. The Taylor minors

are alleged to have owned each an undivided five-eighty-fourths subject to their father's curtesy. The court found the interests of the parties as alleged in the amended petition, adjudged that partition be made among said owners according to their respective rights and interests as found by the court, and appointed commissioners to make partition accordingly.

In due time the commissioners in Case 4701 filed their report. It states that the commissioners proceeded ''to make division and partition of the real estate set forth and described in said (the court's) order to-wit: (Here is described the whole two hundred acres). ''To William B. Taylor they assign and set apart to be held by him during his natural life [here follows description of fifty acres, forty of which is the land in controversy in this suit].''

''Also they assign and set apart to said William B. Taylor to be held by him in fee simple.'' (Here follows description of the two twenty-acre tracts constituting the forty acres now in controversy.)

The various paragraphs or provisions of the report are not numbered, but we shall for convenience of reference refer herein to the foregoing provisions as paragraphs one and two respectively of the report.

It proceeds:

''To Nancy E. Taylor and John W. Taylor they assign and set apart to be held by them in fee simple'' (eighteen acres, described); ''also ten acres off of the west side of the southeast quarter of the northwest quarter of Section 13, the last numbered tract being subject to the life estate of the said William B. Taylor.'' The last described ten acres, together with the forty acres assigned in fee to William B. Taylor in paragraph 2, comprise all of the fifty acres described and assigned for life to Taylor in paragraph 1.

''To Medora Moffit'' (defendant Medora Kennedy herein) ''they assign and set apart to be held by her in fee simple'' (thirty acres, described).

''To Sallie Moffit'' (Sallie Virgin, appellant herein) ''they assign and set apart to be held by her in fee simple'' (thirty-two acres, described).

. Similarly there were assigned and set apart to Joseph Moffit and Ann Moffit, the other two minor Moffit children, thirty-five acres each, accurately described, to be held by them respectively in fee simple. The allotments thus made by the commissioners disposed of the whole two hundred acres and all interests therein.

The Moffit minors, including appellants herein, filed exceptions to the commissioners' report, alleging among other things that it ''does not properly declare the interest of William B. Taylor, the plaintiff.'' The court after a hearing overruled the exceptions and duly approved and confirmed the report, which was thereafter duly

recorded. There was no appeal from the judgment in the partition suit, which therefore, as is conceded, became final.

William B. Taylor, after the partition suit, entered into possession of the forty acres in controversy and from that time till his death in 1925 resided upon and claimed to own it. He erected a new dwelling and outbuildings thereon at considerable expense, with the knowledge of appellants, believing himself the owner, and gave several deeds of trust thereon conveying the full title. Appellants retained the lands allotted to them respectively after they became of age, and Sallie, after reaching her majority, sold the land allotted to her. It does not appear whether Medora sold or still owns her allotment.

By his will, which was duly admitted to probate, Williams B. Taylor devised the lands in dispute to defendants John W. and James F. Taylor, his sons. This suit was brought a year or so after his death.

Plaintiffs' petition is in three counts. The first asks for a construction of the commissioners' report and the judgment in the partition suit and that it be construed to vest the fee simple title to the forty acres in dispute in appellants as ''sole surviving heirs'' of Owen Moffit and Martha Taylor. [They are not sole surviving heirs of Martha, John W. Taylor is her son and it is not shown that Nancy left no children.] The second count is ejectment, and the third seeks partition of the land between *plaintiff and defendant Medora.*

Defendant Medora by her answer asks the same relief sought by plaintiff. Defendants John W. and James F. Taylor, by answer and cross-bill, claim absolute title as devisees of their father, William B., who they assert owned the land in fee by virtue of the judgment in the partition suit which they plead as *res judicata* of the title and claims of all parties to that suit. They also plead estoppel and the several statutes of limitations and ask that title be adjudged to be in them. There is no intimation in the pleadings or evidence that there was fraud in the proceedings or in the procurement of the judgment in Case 4701.

The question that first requires determination is the effect of the judgment in Case 4701. Appellants' contentions respecting that judgment are in substance these: That ''the commissioners granted the fee simple title to the land in question to appellants, subject to the life estate of William B. Taylor; that *either fee simple title was granted to appellants subject to the life estate of William B. Taylor or fee simple title was granted to William B. Taylor* by cause number 4701'' (italics ours); that the commissioners first granted the life estate to Taylor which was within the issues made by the pleadings and the judgment of the court defining the rights of the parties in Case 4701, and that ''the grant by the commissioners afterwards in their award of the fee simple title is void and

subject to collateral attack because outside of the issues made by the pleadings and the judgment of the court defining the rights of the parties;'' that the grant, first of a life estate to Taylor, ''thereby vesting at that instant the fee simple title subject to his life estate in appellants;'' and second, the grant of the fee in the same land to Taylor, are contradictory and repugnant so that both cannot stand.

As we understand appellants' brief their contention, or at least one contention, is that the grant in paragraph one of the commissioners' report of a life estate to Taylor *ipso facto* and *eo instanti* vested the fee in the same lands in appellants,—or else in all of the heirs, we are not clear which is meant. No authorities are cited nor reasons given for such novel claim. Clearly there is no merit in it. Paragraph one of the report does not purport to dispose nor does it dispose of the fee. It only purports to and does segregate, so to speak, and set apart to Taylor his life estate as tenant by the curtesy. The fee in the same lands remained to be partitioned and that the commissioners proceeded to do in subsequent paragraphs. In paragraph two they set off to Taylor for his one-fourteenth fee simple interest in the whole tract the fee in forty acres in which they had already set off to him a life estate. While the commissioners in paragraph two did not state in words that the grant therein of the fee was subject to the previously designated life estate in the same land, there can be no possible doubt that such was the intention. They did expressly so state in paragraph three where the fee in the remaining ten acres of the fifty set apart to Taylor as curtesy was given to persons other than the holder of the life estate. Since the fee in the forty acres in question was being assigned to Taylor, to whom had been assigned also the life estate, and the two estates would therefore merge, the commissioners doubtless deemed it superfluous to state that the fee they were assigning in the forty acres was subject to the life estate therein which they had just assigned to the same person. The two provisions are to be read and construed together. They are not contradictory or incongruous and there is no difficulty in construing the commissioners' report and the judgment confirming it so as to give all provisions thereof the meaning and effect they were plainly intended to have.

The commissioners and the court doubtless considered that the fee in the forty acres subject to Taylor's life estate represented in value his one-fourteenth fee interest in the whole tract and that it was better for all concerned to combine his interests and free the shares allotted to the Moffit children from the hampering life estate— a practical and sensible conclusion withal, but one with the wisdom and fairness of which we have no concern in this collateral attack upon the judgment.

We can perceive no good reason and none has been suggested why Taylor's share in fee could not be set off to him in lands in which he had been assigned a life estate. Land may be partitioned among remaindermen subject to a life estate. [Atkinson v. Brady, 114 Mo. 200, 21 S. W. 480; Carson v. Hecke, 282 Mo. 580, 593, 222 S. W. 850; Byars v. Howe, 311 Mo. 14, 276 S. W. 43.] If the commissioners, after setting off the land in question to Taylor for life, had allotted it in fee to another without specifying that the allotment was subject to the life estate, there might have been conflict between Taylor and such other allottee as to the estate taken by the latter. But it is difficult to see how even that could have injured others whose allotments were not affected and Taylor did not complain. The commissioners' report and the judgment confirming same were clearly meant to assign and did assign to William B. Taylor both the life estate and the remainder in fee in the land in controversy, thereby giving him the entire title. There was no attempt to allot any portion or interest therein to any one else. The whole tract of two hundred acres, including all interest therein, was divided among those found to be entitled, each one's share being accurately designated and set off to him or her. That it was intended to be a complete partition and to give William B. Taylor both a life estate and the remainder in fee in the forty acres in controversy is too plain for doubt.

Appellants' further contention seems to be that though the proceedings and judgment in Case 4701 may purport to vest fee simple title to the land in dispute in Taylor, such part of the judgment is void and subject to collateral attack because "outside of the issues made by the pleadings and the judgment of the court defining the rights of the parties;" and they cite in support thereof Raney v. Home Ins. Co. (Mo. App.), 246 S. W. 57; Charles v. White, 214 Mo. 187, 112 S. W. 545; Gray et al. v. Clement, 296 Mo. 497, 246 S. W. 940.

In Gray v. Clement, supra, which was the second appeal in that case (see same case on first appeal, 286 Mo. 100, 227 S. W. 111), a sale of land pursuant to a judgment in partition was held void and subject to collateral attack, for the reason that the plaintiff in the partition suit had only a life estate in the land sought to be partitioned and that partition could not be maintained by the owner of a life estate only against the remaindermen, the life tenant having no interest in common with the remaindermen, and that therefore the court did not acquire jurisdiction to adjudge partition. There are other decisions to the same effect.

In Charles v. White, supra, the trial court had attempted by its judgment to adjudicate certain rights of the several defendants as among themselves, which were not involved or put in issue by the

pleadings as between the plaintiff and the defendants therein and the defendants' pleadings did not put in issue their rights as among themselves. That part of the judgment which purported to adjudicate rights of defendants as among themselves and which rights were not at issue under the pleadings, was held void and subject to collateral attack because not within the issues presented, therefore not within the court's jurisdiction. Raney v. Home Ins. Co., supra, discusses a similar situation and follows Charles v. White, supra.

We do not regard those cases as being in point. See Rupp v. Molitor (Mo.), 9 S. W. (2d) 609. Taylor had a life estate in an undivided interest in the two hundred-acre tract which he was entitled to have set off to him. [Rupp v. Molitor, supra.] He also owned an undivided interest in fee in the whole tract as tenant in common with other owners, which entitled him to invoke partition thereof between himself and such cotenants in common. [Atkinson v. Brady, supra, in which plaintiff owned a life estate and a one-fifth interest in the fee; Rupp v. Molitor, supra; Byars v. Howe, supra.] We think therefore that the petition in Case 4701 clearly invoked the jurisdiction of the court to partition the lands described therein. Having jurisdiction of the parties and of the subject-matter, it was not only within the court's jurisdiction but was its duty to ascertain and determine the rights, titles and interests of all parties plaintiff and defendant and adjudge partition accordingly. [G. S. 1865, p. 612, sec. 12; R. S. 1879, sec. 3352; R. S. 1919, sec. 2008.] The final judgment confirming the commissioners' report is by statute binding and conclusive upon all parties to the proceedings and all parties claiming under them. [G. S. 1865, p. 613, sec. 25; R. S. 1879, sec. 3367; R. S. 1919, sec. 2023.] In a partition suit brought by one who has the right to bring and maintain it, the rights, titles and interests of the parties, both plaintiff and defendant, in the land sought to be partitioned, are necessarily in issue and final judgment therein is conclusive of such rights and titles. The judgment "is generally held to be conclusive upon every right or title put in issue and decided, or which properly might have been litigated and determined. It therefore establishes the title of the parties to the land partitioned, and is conclusive as to any adverse claim of title or of possession on their part existing at the time of its rendition." [First Nat. Bank & Tr. Co. v. Bowman (Mo.), 15 S. W. (2d) 842, 851, quoting from 34 C. J. 953.] See Missouri cases cited in 15 S. W. (2d) l. c. 851, supra.

In Hart v. Steedman, 98 Mo. 452, 457, 11 S. W. 993, it is held that a judgment in partition vests in each person to whom an allotment is made the title of all parties to the suit.

A further contention of appellants, as we understand their argument, seems to be this: that they were each entitled, as heirs of

Owen Moffit, to a portion of the lands partitioned not subject to Taylor's curtesy, and to another portion as heirs of Martha Taylor, subject to the curtesy, which portions should have been set off to them respectively in separate parcels, one parcel to each in land not subject to the curtesy and another parcel in the fifty acres subject thereto, and that, being minors, they could not consent to take in lieu of their portions in the fifty acres subject to the curtesy, an allotment in land not subject thereto additional to their respective one-seventh shares as heirs of Owen Moffit, and that the allotments made to them represent in legal effect only their respective shares as heirs of Owen Moffit, leaving them nothing as heirs of Martha.

The interests of appellants, though derived by inheritance partly from their father and partly from their mother, were from each parent undivided interests in the whole tract, as were the interests of all other parties. No land embraced within the fifty acres in which a life estate was assigned to Taylor was allotted to any of the Moffit children, minors, nor was any land not subject to his life estate allotted to Taylor. Instead, to each of the Moffit children there was allotted considerably more than one-seventh in area of the remaining one hundred and fifty acres (more also than one-seventh of the whole two hundred acres); from all of which it is apparent that the commissioners allotted to each of said minors an amount of land, free from the life estate, that in the judgment of the commissioners represented the entire interest of each in the whole tract, as heirs of both Owen and Martha. Whether that was a proper division or not we need not here inquire. If error, it should have been corrected in the final judgment (Spitts v. Wells, 18 Mo. 471; Hart v. Steedman, supra) or by appeal from that judgment. We are satisfied that it was not void and subject to collateral attack as not being within the jurisdiction of the court under the pleadings. The judgment cannot be assailed collaterally because of mere error in the proceedings.

"A judgment rendered by a court having jurisdiction of the parties and the subject-matter, unless reversed or annulled in some proper proceeding, is not open to contradiction or impeachment, in respect to its validity, verity, or binding effect, by parties or privies, in any collateral action or proceeding, except for fraud in its procurement. Even if the judgment is voidable, that is, so irregular or defective that it would be set aside or annulled on a proper direct application for that purpose, it is well settled as a general rule that it is not subject to collateral impeachment so long as it stands unreversed and in force." [First Nat. Bank & Tr. Co. v. Bowman, supra, quoting from 34 C. J. 511.] See also Edwards v. Harrison (Mo.), 236 S. W. 328, holding that a judgment not appealed from, confirming commissioners' report awarding to one party a fee instead of a life estate, became conclusive. [Rupp v. Molitor, supra;

Bobb v. Graham, 89 Mo. 200, 1 S. W. 90; Holliday v. Langford, 87 Mo. 577; Bobb v. Kier, 246 S. W. 926, 928.]

We hold that the final judgment confirming the commissioners' report in Case 4701 vested in William B. Taylor fee simple title to the land in controversy and that it is not subject to the collateral attack here made upon it.

We think too that appellants are estopped from challenging the validity and conclusive effect of the judgment in Case 4701. After they reached majority they retained the lands allotted to them, which included land allotted as their interests in their mother's estate. Having thus accepted and retained benefits under the judgment they should not at this late day and while still retaining those benefits, be permitted to repudiate the judgment. Bogart v. Bogart, 138 Mo. 419, 40 S. W. 91, in which it was held that minors as to whom partition proceedings were void affirmed the sale and were estopped from recovering the land by having accepted their shares of the proceeds of sale after they became of age. [See also Fischer v. Sieckmann, 125 Mo. 165, 28 S. W. 435; Jones v. Patterson, 307 Mo. 462, 476, 271 S. W. 370.]

The foregoing conclusions render it unnecessary to consider other questions presented by counsel in their respective briefs. The judgment of the learned trial court was for the right parties and it is affirmed. *Davis* and *Henwood, CC.*, concur.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. *Blair, P. J.*, and *White, J.*, concur; *Walker, J.*, absent.